**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRUSTEES OF THE ABATEMENT
WORKERS NATIONAL HEALTH AND
WELFARE FUND; TRUSTEES OF
ABATEMENT WORKERS NATIONAL
DEFINED CONTRIBUTION PENSION
FUND; TRUSTEES OF THE ABATEMENT
WORKERS NATIONAL VACATION FUND;
TRUSTEES OF THE ABATEMENT
WORKERS REGIONAL LOCAL UNION
NO. 207 JOINT TRAINING FUND; and the
INTERNATIONAL ASSOCIATION OF
HEAT & FROST INSULATORS and
ASBESTOS WORKERS, LOCAL UNION
NO. 207;

                     Plaintiffs,

v.

PROFESSIONAL ABATEMENT SERVICES,
INC., a Michigan corporation, 3D
ENVIRONMENTAL, INC., A MICHIGAN
CORPORATION, PROFESSIONAL
ASBESTOS SERVICES, INC., a Michigan
corporation, DANNY BENNETT, an
individual, and DAVE BENNETT, an
individual, jointly and severally,

                     Defendants.

_____/

Case No.:
HON.

## COMPLAINT

Plaintiffs complain against Defendants as follows: NOW COME Plaintiffs, by and through their attorneys, NOVARA TESIJA & CATENACCI, P.L.L.C., and for their Complaint, state as follows:

1.     The Trustees of the Abatement Workers National Health and Welfare Fund; Trustees of Abatement Workers National Defined Contribution Pension Fund; Trustees of Abatement Workers Regional Local Union No. 207 Joint Training Fund; and Trustees of the

Abatement Workers National Vacation Fund; (hereinafter "Funds") are each a jointly-trusted fund established pursuant to Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 186 and Sections 302 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sections 1132 and 1145, and bring this action on behalf of their individual participants.

2.     The International Association of Heat & Frost Insulators and Asbestos Workers, Local Union No. 207 is a labor organization, as defined in Section 451 of the National Labor Relations Act, 29 U.S.C. § 152 (5), with its principal place of business located at 26465 Northline Road, Taylor, Michigan 48180.

3.     Upon information, knowledge and belief Defendant, Professional Abatement Services, Inc. is a Michigan corporation (hereinafter referred to as "Professional Abatement"), and the principal place of business being 19123 Allen Road, Melvindale, MI 48122.

4.     Upon information, knowledge and belief Defendant, 3D Environmental, Inc. is a Michigan corporation (hereinafter referred to as "3D"), and the principal place of business being 19105 Allen Road, Melvindale, MI 48122.

5.     Upon information, knowledge and belief Defendant, Professional Asbestos Services, Inc. is a Michigan corporation (hereinafter referred to as "Professional Asbestos"), and the principal place of business being 19105 Allen Road, Melvindale, MI 48122.

6.     Upon information and belief Danny Bennett is the owner, officer, and director of Professional Abatement and 3D, and does business at 19105 Allen Road and 19123 Allen Road, Melvindale, MI 48122, as well as 1812 McLain, Lincoln Park, MI 48146.

7.      Upon information and belief Dave Bennett is an officer of Professional Asbestos, and does business at 19105 Allen Road, Melvindale, MI  48122, as well as 9861 Grinnell, Detroit, MI  48213.

8.      Jurisdiction of this Court is founded on Section 301(a) of the LMRA, as amended, 29 U.S.C. Section 185(a) and Sections 502 and 515 of ERISA, 29 U.S.C. Section 1132 and 1145, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA") and Federal common law.  This Court also has pendent jurisdiction of any state-law claims ancillary to the relief sought herein.

## COUNT I
## ERISA: DELINQUENT CONTRIBUTIONS

9.      Plaintiffs hereby re-allege and incorporate the allegations of Paragraphs 1 through 8 of their Complaint as fully set forth herein.

10.      Section 515 of ERISA provides that "every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

11.      Section 502 of ERISA provides a federal forum for enforcement of the various duties imposed by ERISA, including, but not limited to, allowance of a lawsuit to enjoin any act which violates ERISA or to obtain other appropriate legal and equitable relief.

12.      Pursuant to the collective bargaining agreement (hereinafter "CBA") between Professional Abatement and the Union, Professional Abatement agreed to make employee fringe benefit contributions and assessments to the Funds for each employee covered by the collective bargaining agreement, which are individuals in the appropriate bargaining unit

who perform covered work ("Employees"), and to be bound by the terms and conditions set forth in the Funds' Trust Agreements (the "Trust Agreements").  Defendants have copies of all records within their files; notwithstanding, Plaintiffs have attached a copy of the collective bargaining agreement, along with its signature page hereto and incorporated herein as **Exhibit 1** and the relevant Trust Agreements as **Exhibit 2, 2-1, 2-2 and 2-3**.

13.     The Funds are third-party beneficiaries of the parties' collective bargaining agreement.

14.     Professional Abatement has violated both its contractual and statutory obligations by failing to make all of the fringe benefit contributions and assessments due on behalf of each Employee covered by the collective bargaining agreement and as incorporated in same, the relevant Trust Agreements.

15.     As a result of Professional Abatement's violations of its contractual and statutory obligations, Defendants have violated ERISA, the collective bargaining agreement and the relevant Trust Agreements.

16.     Plaintiffs are entitled to all remedies under ERISA, including, but not limited to, payment of fringe benefit contributions owed, audit assessments, liquidated damages, attorneys' fees and costs.

17.     At all relevant times, Professional Abatement was bound to the parties' collective bargaining agreement, which includes, but is not limited to, the time period of January 2011 to the present.

18.     The Funds have been damaged in an amount as found due by a November 2015 audit in the amount of $124,177.47 covering the work months of January 2011 through December 2014 (see attached **Exhibit 3**).

19.     Further, in operating Professional Abatement, upon information, knowledge and belief, Defendant Danny Bennett has, among other things, (a) failed to follow business formalities, (b) failed to adequately capitalize the business which has caused a failure to remit contributions to Plaintiffs, (c) commingled personal and business assets, and (d) committed fraud by taking monies from the business while failing to make fringe benefit contributions to Plaintiffs.

20.     An injustice will be imposed on Plaintiffs in the absence of individual liability because the ability of Professional Abatement to pay delinquencies owed to Plaintiffs and their participants is in serious doubt.

21.     Professional Abatement has fraudulently avoided paying required benefit contributions to Plaintiffs and engaged in misconduct, which includes, but is not limited to, converting money paid to it for the purpose of paying benefit contributions to Plaintiff Funds and retaining monies required to be paid for the benefit of its employees.

22.     As officers, directors, manager, members and/or shareholders and people who make decisions, Defendant Danny Bennett, is responsible for Professional Abatement's compliance with its contractual and statutory obligations to Plaintiffs.

23.     Notwithstanding Professional Abatement's contractual and statutory obligations, upon information, knowledge and belief, Defendant Danny Bennett has failed to follow business formalities, had personal knowledge of Professional Abatement's undercapitalization, and with the requisite intent, fraudulently and improperly diverted monies which were to be paid for the benefit of its employees.

24.     Because of Defendant Danny Bennett's actions and/or inactions cited within this Complaint, Plaintiffs have suffered financial losses.

WHEREFORE, Plaintiffs request that the Honorable Court grant the following relief:

a. Enter a judgment in the Plaintiffs' favor against Professional Abatement and Danny Bennett, in an amount of $124,147.77, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and other sums as may become due or discovered to be due the Funds during the pendency of this action;

b. Order an updated audit of the Defendants to determine any additional amount due the Plaintiffs;

c. That jurisdiction of this matter be retained pending compliance with the Court's orders; and

d. Any such other, further or different relief as may be just and equitable under the circumstances.

## COUNT II
## ALTER-EGO/SUCCESSOR LIABILITY

25. Plaintiffs hereby re-allege and incorporate the allegations of Paragraphs 1 through 24 of their Complaint as fully set forth herein.

26. Upon information and belief, Professional Abatement, 3D Environmental, and Professional Asbestos are owned and operated by Danny Bennett.

27. Upon information and belief, Professional Abatement's employees now perform asbestos abatement and related work for 3D Environmental and Professional Asbestos and all companies share or have shared employees.

28. Upon information and belief, 3D Environmental and Professional Asbestos are using the same supplies, materials, equipment and customers/clients as Professional Abatement did.

29. 3D Environmental and Professional Asbestos are the alter-egos and/or successors of Professional Abatement and therefore, bound to the terms and conditions of the CBA currently existing between the Union and Professional Abatement.

30.     Pursuant to the terms of the CBA, and the Agreements, Defendants are required to make timely fringe benefit contributions due to the Funds, and are required to submit to an audit of their payroll records, in order to verify the accuracy of said contributions.

31.     3D Environmental and Professional Asbestos, as the alter-egos/successors, are jointly liable for the fringe benefit contributions due the Funds, and are required to submit to an audit of their payroll records.

32.     The Funds are third party beneficiaries of the CBA.

33.     Professional Abatement, 3D Environmental and Professional Asbestos have violated their contractual and statutory obligations by failing to pay all of the fringe benefit contributions due on behalf of each employee covered by the CBA and to permit an audit of their records.

34.     The Funds have been damaged in such amount as is found due by an audit.

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A.     Enter a declaratory order finding 3D Environmental, Professional Asbestos and/or any other successor or entity related to Professional Abatement is bound to the CBA as an alter ego/successor and is jointly and severally liable for any amounts found due by an audit;

B.     Enter a judgment in the Funds' favor against Professional Abatement, 3D Environmental, Professional Asbestos, and any other related entity, in the amount of 124,147.77, together with any accumulated interest, actual attorney fees, court costs, audit, and other collection costs;

C.     Order an updated audit of Professional Abatement, 3D Environmental, Professional Asbestos to determine any additional amounts due the Funds;

D.     That jurisdiction of this matter be retained, pending compliance with the Court's orders; and

E.     Any such other, further or different relief as may be just and equitable under the circumstances.

## COUNT III
## BREACH OF FIDUCIARY DUTIES

35.     Plaintiffs hereby re-allege and incorporate the allegations of Paragraphs 1 through 34 of their Complaint as fully set forth herein.

### General

36.     Participants of the Funds were employed by Professional Abatement, as well as its alter-ego/successors, 3D Environmental and Professional Asbestos (Professional Abatement, 3D Environmental, and Professional Asbestos shall hereinafter be referred to as "Corporate Defendants"), to perform work and provide labor on various construction projects in the State of Michigan.

37.     The participants of the Funds provided labor and services, on behalf of Corporate Defendants, pursuant to the parties' CBA and thus earned outstanding fringe benefit contributions in connection with and in furtherance of their employment and labor on said projects.

38.     Corporate Defendants were obligated to pay fringe benefit contributions to the Funds for these participants on said projects.

39.     The outstanding accrued fringe benefit contributions were properly payable to the Funds administered by Plaintiffs when due.

40.     Corporate Defendants received monies on said projects, but failed to pay all of the fringe benefit contributions owed the Funds on said projects when due.

41.     The accrued fringe benefit contributions and monies in Corporate Defendants' possession, custody and/or control from said projects which were available to pay the

8

participants' accrued fringe benefit contributions were to be held in trust by Defendants in their capacity as fiduciaries, as required by ERISA, 29 U.S.C. §1145, until Defendants paid to Plaintiffs said fringe benefit contributions in accordance with the terms and conditions of their CBA and Trust Agreements.

42.     The Trust Agreements for the Funds, incorporated by the relevant CBA (see **Exhibit 2,** Article III, Section 3.7; **Exhibit 2-1,** Article III, Section 3.7; **Exhibit 2-2,** Article III, Section 3.7; and **Exhibit 2-3,** Article III, Section 3.7, attached hereto and made a part hereof by reference) provide that unpaid contributions become plan assets at the time they become due.

43.     Defendants, including the individual Defendants, being Danny Bennett and Dave Bennett, had actual and/or constructive notice of the above-referenced Trust Agreements and their respective amendments.

44.     Thus, Defendants accrued fringe benefit contributions owed to the Funds on said projects, that became plan assets of the respective Funds administered by Plaintiffs at the time they became due, as provided for in the Trust Agreement and Plan documents, within the meaning of ERISA §3(21)(A); 29 U.S.C. §1002(21)(A).

45.     ERISA provides that a person is a fiduciary with respect to the Funds to the extent that the person exercises any discretionary authority or control with the respect to the disposition of Plan assets. ERISA §3(21)(A); 29 U.S.C. § 1002(21)(A).

46.     Owners, officers, and/or directors of Corporate Defendants are considered fiduciaries of the Funds based upon the conduct and authority of said people, including, but not limited to, their personal exercise of discretionary authority and control over Funds' assets.

47.     Defendants Danny Bennett and Dave Bennett as owners, officers, and/or directors of Corporate Defendants, and upon information, knowledge and belief, personally exercised

discretionary authority and control over the disposition of Corporate Defendants' accrued fringe benefit contributions, being plan assets recognized by ERISA.

48.      Defendants Danny Bennett and Dave Bennett, as owners, officers, and/or directors of Corporate Defendants are considered a fiduciary of the Funds based upon their conduct and authority over the contributions associated with same.

49.      Upon information, knowledge and belief, Defendants Danny Bennett and Dave Bennett, as owners, officers, and/or directors of Corporate Defendants, personally exercised discretionary authority and control over the disposition of Corporate Defendants' accrued fringe benefit contributions, which are plan assets as defined by ERISA and the relevant Trust Agreement and Plan documents.

50.      Since Defendants Danny Bennett and Dave Bennett, as owners, officers, and/or directors of Corporate Defendants personally exercised discretionary authority and control over Corporate Defendants' accrued fringe benefit contributions, being plan assets, they are a fiduciary of the Funds.

51.      Although legally and contractually obligated to do so, Defendants Danny Bennett and Dave Bennett failed to turn over the above-mentioned plan assets by failing to pay all of the accrued outstanding fringe benefit contributions to Plaintiffs when due.

52.      Upon information, knowledge and belief, Defendants Danny Bennett and Dave Bennett utilized the accrued outstanding fringe benefit contributions and monies within their possession, custody and/or control for purposes other than payment to Plaintiffs.

53.      In failing to turn over such plan assets to Plaintiffs, Defendants Danny Bennett and Dave Bennett violated 29 U.S.C. §§1145, 1104 and 1109, and their obligations under the CBA and Trust Agreements.

54.     Defendants Danny Bennett and Dave Bennett failure to turn over the plan assets, failure to make fringe benefit contributions to Plaintiffs, failure to account for those contributions, and misuse of funds and monies otherwise payable to Plaintiffs, constitutes a breach of fiduciary duties regarding the Funds pursuant to 29 U.S.C. §1104(a)(1)(A) and are violations of 29 U.S.C. §§ 1145, 1104 and 1109(a).

55.     Thus, by directing that Corporate Defendants' assets, which were owed to the Funds, be paid for other purposes instead of being deposited with the Funds for their participants and beneficiaries, Defendants Danny Bennett and Dave Bennett failed to discharge their fiduciary duties with respect to the Funds solely in the interest of the participants and beneficiaries as required by ERISA 404(a)(1); 29 U.S.C. §1104(a)(1).

56.     ERISA imposes personal liability on a fiduciary that breaches fiduciary duties. 29 U.S.C. §1109.

57.     As a result of the above-mentioned actions, Defendants Danny Bennett and Dave Bennett breached their fiduciary duties owed to the Funds and are thus, personally liable to the Funds for such breaches.

58.     Defendants Danny Bennett and Dave Bennett knew or should have known that they would be held personally liable for her above-referenced actions.

59.     ERISA also provides that if there is a loss caused by a breach of fiduciary duty, the fiduciary must make the Plan whole by restoring any losses caused by the breach. 29 U.S.C. §1109.

60.     Due to the above-mentioned actions and/or inactions of Defendants Danny Bennett and Dave Bennett, the loss to the Funds is $124,147.77.

61.     Defendants Danny Bennett and Dave Bennett, as fiduciaries, must make the Funds whole by restoring the above-mentioned losses to the Funds.

62.     As stated within, the Funds have been damaged in an amount of $124,147.77 because of Defendants Danny Bennett and Dave Bennett breach of their fiduciary duties.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.   Enter a judgment in the Plaintiffs' favor against Professional Abatement, 3D Environmental, Professional Asbestos, Danny Bennett, and Dave Bennett, in an amount of $124,147.77, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and other sums as may become due or discovered to be due the Funds during the pendency of this action;

b.   Order an updated audit of the Defendants to determine any additional amount due the Plaintiffs;

c.   That jurisdiction of this matter be retained pending compliance with the Court's orders; and

d.   Any such other, further or different relief as may be just and equitable under the circumstances.

## COUNT IV
## MICHIGAN BUILDING CONTRACT FUND ACT

63.     Plaintiffs hereby re-allege and incorporate the allegations of Paragraphs 1 through 62 of their Complaint as fully set forth herein.

64.     Participants of the Funds were employed by Professional Abatement, 3D Environmental and Professional Asbestos to perform work on various construction projects in the State of Michigan.

65.     Professional Abatement, 3D Environmental and Professional Asbestos have failed to pay all of the fringe benefit contributions owed the Funds on said projects.

66.     The Michigan Building Contract Fund Act (the "Act"), MCLR 570.151 et seq., imposes a trust on funds paid to a building contractor with subcontractors and material men as beneficiaries of said trust.

67.     Under the Act, Danny Bennett and Dave Bennett are fiduciaries and trustees for the Funds' participants, who are the beneficiaries of all monies paid to Company on said projects.

68.     The Defendants have failed to pay over to the Funds the monies held in trust and covered by the Act, which are due the Plaintiffs.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.      Enter a judgment in the Plaintiffs' favor against Professional Abatement, 3D Environmental, Professional Asbestos, Danny Bennett, and Dave Bennett, for no less than $124,147.77, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and such other sums as may become due the Funds during the pendency of this action;

b.      Order an updated audit of the Defendants to determine any additional amount due the Plaintiffs;

c.      That jurisdiction of this matter be retained, pending compliance with the Court's orders; and

d.      Any such other further or different relief as may be just and equitable under the circumstances.

Respectfully submitted,

NOVARA TESIJA & CATENACCI, P.L.L.C.


By: /s/Edward J. Pasternak

Edward J. Pasternak (P58766)
Attorneys for Plaintiffs
2000 Town Center, Ste. 2370
Southfield, MI  48075-1314
(248) 354-0380
ejp@novaratesija.com


Dated:  August 17, 2018


W:\FUNDS\ABAT207\LITIGATE\Professional Abatement\Case No. 18-cv\COMPLAINT.doc